## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAWN PETTY,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN FEDERATION OF<br>GOVERNMENT EMPLOYEES,<br><br>        Defendant. | Civil Action No. 21-3161 (CKK) |

## MEMORANDUM OPINION
(December 17, 2021)

Following allegations of sexual misconduct, Plaintiff Shawn Petty resigned from his position as a National Vice President of Defendant American Federation of Government Employees ("Defendant" or "AFGE").  In the evening of December 8, 2021, Plaintiff filed a [9] Motion for a Temporary Restraining ("TRO Motion"), seeking—among other relief—to enjoin an internal trial committee hearing that was then scheduled for 11:00 a.m. on December 9, 2021. Plaintiff argued that he had not received timely notice of the trial committee proceeding or the charges against him.  He also argued that his resignation as a National Vice President was "ineffective," that he continues to hold that position, and, therefore, that AFGE must proceed with any disciplinary actions pursuant to Article XIII of its National Constitution—instead of the procedures provided by Articles IX and XXIII, which guide disciplinary procedures for members. Plaintiff seeks a temporary restraining order (1) reinstating him as National Vice President; (2) requiring AFGE to send a letter informing all AFGE members and officers that he did not resign

from his national position; and (3) cancelling the trial committee hearing, which is now scheduled to take place no earlier than December 20, 2021.[1]

Upon review of the pleadings,[2] the relevant legal authority, and the record as it stands at this early juncture, the Court concludes that Plaintiff has failed to carry his burden to demonstrate that he is entitled to the drastic relief of a temporary restraining order preventing the trial committee hearing from proceeding on December 20, 2021 or later, reinstating Plaintiff as a national officer, and requiring that AFGE inform its members that Plaintiff did not resign.  Accordingly, the Court **DENIES** the remainder of Plaintiff's Motion for a Temporary Restraining Order.

## I.    BACKGROUND

Defendant American Federation of Government Employees ("AFGE") is a national labor union, which maintains its principal office in Washington, D.C. and is comprised of 1,067 local affiliates.  Compl. ¶¶ 10, 11, ECF No. 1.  AFGE is governed by a National Executive Council (the

---

[1] Plaintiff's TRO Motion also sought to enjoin a special election scheduled for December 11, 2021 to fill the position from which Plaintiff had resigned.  The Court previously addressed that portion of the motion and denied Plaintiff's request for a TRO to prevent that election from proceeding.  *See* Order, ECF No. 28; Mem. Op., ECF No. 29. This Memorandum Opinion addresses the remaining relief requested by Plaintiff in his  TRO Motion.  *See* Order, ECF No. 20.

[2] The Court's consideration has focused on the following:

- Plaintiff's Motion for Temporary Restraining Order ("Pl.'s TRO Mot."), ECF No. 9;
- Plaintiff's Memorandum of Points & Authorities in Support of Plaintiff's Motion for a Temporary Restraining Order ("Pl.'s TRO Mem."), ECF No. 12;
- Defendant AFGE's Opposition to Plaintiff's Motion for a Temporary Restraining Order ("Def.'s Opp'n"), ECF No. 21;
- Plaintiff's Reply on the Issue of Whether Plaintiff Timely Rescinded his Resignation or Whether Kelley Had Authority to Accept Resignation Without Approval of the NEC ("Pl.'s Reply"), ECF No. 22;
- Defendant AFGE's [Second] Opposition to Plaintiff's Motion for a Temporary Restraining Order ("Def.'s (2d) Opp'n"), ECF No. 32;
- Plaintiff's Reply to Defendant AFGE's Opposition to Plaintiff's Motion for a TRO ("Pl.'s (2d) Reply"), ECF No. 34.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

"Council"), comprised of the National President, the National-Secretary Treasurer, the National Vice President for Women and Fair Practice, and twelve National Vice Presidents.  Plaintiff Shawn Petty is a member of AFGE's Local 916, which represents employees of the U.S. Department of Defense at Tinker Air Force Base in Oklahoma City, Oklahoma.  *Id.* ¶ 7.  Plaintiff was elected to serve as "National Vice President for District 9" on October 3, 2020.  *Id.* ¶¶ 1, 5, 8.

In this action, Plaintiff alleges that he was forced to resign from his position as a National Vice President following allegations that he had sexually harassed and/or assaulted an AFGE member at a union-hosted event in October 2021.  *See id.* ¶¶ 114–36.  Plaintiff now claims that his resignation was not "effective" because it was not "approved" by the Council before he communicated to AFGE's National President that he wanted to rescind his resignation.  *Id.* ¶¶ 137–53, 159–60.  Based on that claim,  Plaintiff filed a Motion for Temporary Restraining Order ("TRO Motion") on December 8, 2021, seeking, among other relief, to enjoin a December 9, 2021 trial committee hearing and a December 11, 2021 special election to fill the position from which he resigned.  *See* Pl.'s TRO Mem. at 1.  With both parties' agreement, the trial committee hearing was postponed until at least December 20, 2021.  *See* Order, ECF No. 20.  The Court has already denied Plaintiff's request to enjoin the special election.  *See* Order, ECF No. 28.

To provide context for Plaintiff's last-minute request to enjoin these events, the Court shall present the facts—as they are alleged in the Complaint or otherwise presented on the current record—underlying Plaintiff's resignation and his efforts to rescind his resignation.  The Court shall then discuss Plaintiff's present request for immediate injunctive relief, as it pertains to the remaining portions of Plaintiff's TRO Motion that were not addressed by the Court in its December 10, 2021 Order and Memorandum Opinion, ECF Nos. 28, 29.

### A.  Factual Background

Plaintiff attended a three-day training session sponsored by AFGE at a Days Inn in Altus, Oklahoma from October 19–22, 2021.  Compl. ¶¶ 23, 24.  He claims that, during that event, he had a "consensual physical contact" with an "Unnamed Female," who is also an AFGE member. *Id.* ¶ 40.  The "contact" purportedly occurred in the presence of witnesses and was captured by the hotel's surveillance cameras.  *Id.* ¶¶ 106, 108.  Plaintiff claims that this "Unnamed Female" initiated the "contact" by flirting with him and massaging his shoulders, and that she did not complain to other AFGE local and national officers present at the conference that the contact was "unwelcomed."  *Id.* ¶¶ 66, 89.

Plaintiff alleges that on October 25, 2021, he received a telephone call from AFGE's National President, Everett Kelley.  *Id.* ¶ 113.  Mr. Kelley told him that the Unnamed Female had filed charges against Plaintiff.  *Id.* ¶ 114.  Mr. Kelley then told Plaintiff that he had viewed the surveillance video from the Days Inn and that "it doesn't look good."  *Id.* ¶ 117.  Mr. Kelley then allegedly told Plaintiff that it would be "best" for Plaintiff's family and AFGE's National Executive Council for Plaintiff to resign from his position as a National Vice President.  *Id.* ¶ 130. Plaintiff responded that he wanted to go on "stress leave" for a few weeks before making any decision, but Mr. Kelley refused this proposal.  *Id.* ¶¶ 131–32.  Mr. Kelley then allegedly informed Plaintiff that if he did not immediately submit a letter of resignation, Mr. Kelley would "call an emergency meeting with the [National Executive Council] tomorrow, and with everything going on, it would be political suicide for the [Council] not to remove you from your position.  It would be best if you made it easy for yourself and the [Council] by resigning."  *Id.* ¶ 133.  Plaintiff told Mr. Kelley that he would consider resigning.  *Id.* ¶ 134.

Plaintiff alleges that, approximately 90 minutes after this phone call, Mr. Kelley called him again and "pressured him to resign."  *Id.* ¶ 136.  At 9:45 p.m. on October 25, 2021, Plaintiff sent

an email to Mr. Kelley, stating, "Due to personal reasons, I am resigning as 9th District National Vice president effective today, October 25, 2021." Def.'s Opp'n Ex. 4, 10/25/21 9:45 PM Email from S. Petty to E. Kelley, ECF No. 21-4. Less than one hour later, Mr. Kelley responded, "I accept your resignation effective immediately. You are no longer authorized to act on behalf of AFGE, and you have relinquished all rights and privileges of your office." Def.'s Opp'n Ex. 5, 10/25/21 10:22 PM Email from E. Kelley to S. Petty, ECF No. 21-5. The same email noted that AFGE "reserves it rights to investigate the conduct alleged against you and take any and all action it deems appropriate." *Id.*

After Mr. Kelley accepted Plaintiff's resignation, he immediately notified the Council. *See* Def.'s Opp'n at 10; Def.'s Opp'n Ex. 2, 10/25/21 Mem. re: Vacancy in District 9 National Vice President Position, ECF No. 21-2; Def.'s Opp'n Ex. 7, 10/25/2110:45 PM Email from E. Kelley to "NEC Only," ECF No. 21-7. Mr. Kelley also informed "District 9 Leaders" on October 26, 2021 that Plaintiff had resigned from his position and that Mr. Kelley had accepted his resignation. Def.'s Opp'n Ex. 12, 10/26/21 12:22 PM Email from E. Kelley, ECF No. 21-12. He noted that a special election would be held to fill the vacancy. *Id.*

On October 28, 2021, Plaintiff changed his mind about resigning. Compl. ¶ 146. He sent a letter by email to Mr. Kelley, indicating that he wanted to rescind his resignation. *Id.* ¶ 147. In a subsequent telephone conversation, Mr. Kelley told Plaintiff that he did not know whether or not Plaintiff could withdraw his resignation, but that he would speak with AFGE's General Counsel about the matter. *Id.* ¶¶ 150, 152.

On October 29, 2021, Mr. Kelley responded to Plaintiff by letter, indicating that Plaintiff's resignation was "final and binding," that his "attempted recission [*sic*] is not effective," and that "given the nature of the alleged misconduct, your attempted recission [*sic*] would not be accepted,

regardless." Def.'s Opp'n Ex. 11, 10/29/21 Letter from E. Kelley to S. Petty, ECF No. 21-11. Mr. Kelley's letter recounts that Plaintiff had resigned from his position "first verbally and then in writing, on Monday October 25, 2021," and that Mr. Kelley had "responded in writing on that same date accepting your resignation on behalf of AFGE." *Id.* It further notes that Plaintiff's "alleged conduct, specifically an alleged sexual assault/sexual harassment, in a public area of a hotel during an AFGE event with witnesses present and a security camera recording the entire scene, was utterly egregious" and that he had "referred the matter to the Legal Rights Committee for investigation and recommendations concerning what further actions, if any, AFGE should take against [Plaintiff]." *Id.*

On November 1, 2021, Plaintiff's counsel sent a letter to Mr. Kelley, all members of the National Executive Council, and AFGE's General Counsel, stating Plaintiff's position that Mr. Kelley had no legal authority to accept his resignation because only the Council had authority to do so. Compl. ¶ 159. The same letter stated Plaintiff's position that Mr. Kelley did not have authority to reject Plaintiff's attempt to rescind his resignation because the Council had not yet voted to accept his resignation. *Id.* ¶ 160. Plaintiff's counsel subsequently notified Defendant's counsel, on November 11, 2021, that Plaintiff intended to seek a temporary restraining order, enjoining the special election. *See* Def.'s Opp'n Ex. 9, 11/11/21 8:37 PM Email from K. Morten to D. Borer, R. Sanghvi, ECF No. 21-9.

On November 15, 2021, AFGE's counsel sent to Plaintiff's counsel a letter from Mr. Kelley addressed to Plaintiff, indicating that, pursuant to Articles IX and XXIII of the AFGE National Constitution, he was "preferring charges" against Plaintiff based on the allegations of "inappropriate sexual conduct" during the training event in Oklahoma. *See* Def.'s Opp'n Ex. 3, 11/15/21 Letter from E. Kelley to S. Petty c/o K. Morton at 1, ECF No. 21-3. The same letter

indicates that, under Article IX, Section 5(e), Mr. Kelley would "appoint[ ] a  trial committee to adjudicate the charges against you." *Id.*   In his TRO Motion, Plaintiff indicates that he was not "serve[d]" with these charges until December 6, 2021, when he received them by certified mail. Pl.'s TRO Mem. at 14.  Plaintiff also claims that he was only notified on December 6, 2021 that the trial committee was scheduled to take place on December 9, 2021 at 11:00 a.m. *Id.*

On November 23, 2021, Plaintiff announced his candidacy for the National Vice President for District 9 special election.  Def.'s Opp'n Ex. 10, 11/23/21 Email from S. Petty to E. Bunn (AFGE), ECF No. 21-10.  After the Court denied Plaintiff's TRO Motion to the extent it sought to enjoin the special election, the election proceeded as scheduled on December 11, 2021; Plaintiff was not elected to the National Vice President for District 9 position.  *See* Def.'s (2d) Opp'n at 9.

### B.  Plaintiff's Motion for a Temporary Restraining Order

In the evening of December 8, 2021, Plaintiff filed a  [9] Motion for Temporary Restraining Order and later, at 11:02 p.m., filed a [12] Memorandum of Points and Authorities in support thereof.  On December 9, 2021, at 9:15 a.m., the Court held the first of two teleconferences with the parties.  During this first teleconference, the Court discussed with the parties the more imminent event Plaintiff sought to enjoin—the trial committee hearing then-scheduled to begin less than two hours later, at 11:00 a.m.  The Court discussed with the parties what notice Plaintiff had received of the charges against him and of the trial committee hearing date.  Plaintiff indicated that AFGE's National Constitution requires that he receive 14-days' notice of the charges against him and of  the trial committee hearing date, but that he did not receive notice of either until December 6, 2021.  AFGE's counsel indicated that AFGE had provided Plaintiff notice of the charges by letter to his counsel on November 15, 2021 and that it had notified Plaintiff of the December 9, 2021 hearing date as of November 24, 2021.  Plaintiff's counsel responded that, at the time Mr. Kelley preferred charges against Plaintiff on November 15, 2021, the scope of her

representation of Plaintiff did not encompass the internal disciplinary proceedings initiated by AFGE, which she claims was conveyed to AFGE's counsel when she informed AFGE that she would not accept "service" of the charges on Plaintiff's behalf.   The Court directed the parties to provide to the Court their communications showing when Plaintiff received notice of the charges and the hearing date.

Upon review of these communications, the Court concluded that whether Plaintiff's counsel had clearly communicated the scope of her representation and whether Plaintiff had received sufficient notice of the charges and hearing date was not clear-cut.  Accordingly, after its initial review of these communications, the Court held a second teleconference with the parties, at 12:30 p.m. on December 9, 2021 to discuss how to proceed with addressing Plaintiff's TRO Motion.  *See* Minute Order (Dec. 9, 2021).

During the second teleconference, the parties agreed that the trial committee hearing would be postponed until at least December 20, 2021—14 days after Plaintiff indicates he received formal "service" of the charges against him and notice of the trial committee hearing date. The parties also agreed that they would first proceed with briefing Plaintiff's claims pertaining to his request for a TRO enjoining the December 11, 2021 special election.  *See* Order, ECF No. 20.  The Court denied that portion of the TRO Motion on December 10, 2021.  *See* Order, ECF No. 28; Mem. Op., ECF No. 29.[3]

The remainder of Plaintiff's TRO Motion is now before the Court.  Plaintiff seeks an order "reinstating" him as the National Vice President for District 9; directing AFGE to "send a letter" to "all AFGE members, officers, and staff informing them that that [Plaintiff] did not resign due

---

[3] On December 12, 2021, Plaintiff filed a [30] Motion for Reconsideration of the Court's order denying Plaintiff's TRO Motion to the extent it sought to enjoin the special election.  The Court denied the motion for reconsideration on December 13, 2021.  *See* Order, ECF No. 31.

to allegations of misconduct, but rather that he rescinded his resignation and denies that he engaged in misconduct"; and "[c]anceling" the "trial committee hearing" and "restraining" Mr. Kelley from "appointing a trial committee" to adjudicate the "Article XXIII charges." Pl.'s TRO. Mem. at 34.

## II.    LEGAL STANDARD

"Temporary restraining orders and preliminary injunctions are 'extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion.'" *Lofton v. District of Columbia*, 7 F. Supp. 3d 117, 120 (D.D.C. 2013) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).   An application for a TRO is analyzed using the same factors applicable to a request for preliminary injunctive relief.   *See, e.g.*, *Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011) (applying preliminary injunction standard to district court decision denying motion for TRO and preliminary injunction); *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011) (articulating TRO elements based on preliminary injunction case law).

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (internal quotation marks omitted)).   A plaintiff seeking preliminary injunctive relief "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (internal citation and quotation marks omitted). When seeking such relief, "the movant has the burden to show that all four factors, taken together,

weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (internal citation and quotation marks omitted).   "The four factors have typically been evaluated on a 'sliding scale.'"   *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291–92.

It is unclear whether the United States Court of Appeals for the District of Columbia Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015).   Several judges on the D.C. Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'"   *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring)).   However, the D.C. Circuit has yet to hold definitively that *Winter* has displaced the sliding-scale analysis.   *See id.*; *see also Save Jobs USA*, 105 F. Supp. 3d at 112. In light of this ambiguity, the Court shall consider each of these factors and shall only evaluate the proper weight to accord the likelihood of success if the Court finds that its relative weight would affect the outcome.

### III.   DISCUSSION

#### A.  Likelihood of Success on the Merits

In order to receive a TRO, the moving "party must show, among other things, 'a *substantial* likelihood of success on the merits.'"   *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (emphasis added) (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009)).   "The merits on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." *Elec. Priv. Info. Ctr. v. Dep't*

*of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019) (internal quotations and citations omitted). Therefore, "[t]o establish likelihood of success on the merits, Plaintiffs must first establish that their claims are justiciable." *Rai v. Biden*, No. 21-CV-863-TSC, 2021 WL 4439074, at *4 (D.D.C. Sept. 27, 2021) (citing *Food & Water Watch, Inc.*, 808 F.3d at 913).   A plaintiff who fails to show a substantial likelihood of jurisdiction is "not entitled to any relief, let alone the extraordinary remedy" of preliminary injunctive relief.  *See Schindler Elevator Corp. v. WMATA*, 514 F. Supp. 3d 197, 212 (D.D.C. 2020), *aff'd* No. 21-7008, 2021 WL 4928730 (D.C. Cir. Oct. 22, 2021).

As discussed below, Plaintiff has failed to carry his burden of demonstrating a substantial likelihood of success on the merits of his remaining requests for relief, and he has similarly failed to carry his burden of demonstrating that the Court has jurisdiction.   Therefore, this first factor weighs decidedly against granting the drastic relief Plaintiff seeks here.

### 1. Plaintiff's Claims Regarding Lack of Notice Are Moot Due to the Postponement of the Trial Committee Hearing.

In his TRO Motion, Plaintiff sought to enjoin the trial committee hearing from proceeding on December 9, 2021 based, in large part, on his claim that he had not received 14 days' notice of the hearing date and had not been "served" with the charges at issue until December 6, 2021.  *See* Pl.'s TRO Mem. at 14, 23, 32, 34.   The AFGE Constitution requires that "the presiding officer shall notify the accused and those who preferred the charges by registered or certified mail of the time and place of trial, and such trial shall be held promptly but shall not be held less than two weeks after the mailing of the notice[.]"  AFGE Constitution Art. XXIII § 4.

AFGE agreed to postpone the trial committee hearing until at least December 20, 2021— 14 days after Plaintiff indicates that he was "served" with the charges and notice of the hearing date.  *See supra* Section I(B); Order, ECF No. 20.   Accordingly, Plaintiff's request for a TRO to enjoin the trial committee hearing based on lack of adequate notice is no longer a live issue.

> **2.   Plaintiff Has Failed to Demonstrate a Substantial Likelihood of Success on the Merits of His Remaining Claims for Relief.**

In addition to challenging the timing of the trial committee hearing, Plaintiff also seeks an order "cancelling" the trial committee hearing altogether, based on his claim that AFGE must follow the procedures provided in Article XIII of the AFGE Constitution, which applies to charges against national officers.   *See* Pl.'s (2d) Reply at 20–21 ("[Mr.] Kelley should have filed disciplinary charges against Plaintiff under Article XIII which governs disciplinary charges filed against national officers.   Instead, Kelley filed Article IX and Article XXIII charges[.]").   Mr. Kelley appointed the trial committee pursuant to Articles IX and  XXIII, which provide the procedures for addressing misconduct of members.   *See* Def.'s Opp'n Ex. 3, 11/15/21 Letter from E. Kelley to S. Petty c/o K. Morton at 1, ECF No. 21-3; Def.'s (2d) Opp'n at 19.

But Plaintiff's argument that AFGE has relied on the incorrect constitutional provision hinges on his argument that he is likely to succeed in demonstrating that his resignation was "ineffective" and therefore that he remains a national officer who is entitled to the disciplinary procedures provided in Article XIII.   *See* Pl.'s (2d) Reply at 4.   As the Court previously concluded, Plaintiff has *not* demonstrated that he likely to succeed on the merits of such a claim.   *See* Mem. Op. at 10–14, ECF No. 29.   As the Court previously explained, Plaintiff has not identified any portion of the AFGE Constitution guaranteeing him any "right" to have a resignation "approved" by the Council before it is deemed effective.   *Id.* at 11.   To the contrary, Plaintiff concedes that AFGE's Constitution is "silent" as to this issue.   *Id.* (citing Pl.'s Reply at 8).   Instead, Plaintiff argues that *Roberts Rules of Order* apply in this situation, and those rules of procedure direct that the power to accept resignations lies solely with the Council, *see* Pl.'s Reply at 8; Compl. ¶¶ 142, 143 ("In order for NVP Petty's resignation to have become effective, the members of the NEC would have had to have met and accepted it.").   The Court rejected this argument, concluding that

Plaintiff had failed to demonstrate that *Robert's Rules* apply in this situation, and, *even if they did*, they suggest that the Council does *not*, in fact, have the power to accept the resignation of an NVP, let alone the sole and exclusive power to accept such resignations.[4]  *See* Mem. Op. at 12–13.  The Court also previously concluded that, "[b]ecause neither the text of the Constitution nor *Robert's Rules of Order* specify that the power to accept resignations lies exclusively with the Council," Plaintiff has "not demonstrated a likelihood of success on the merits on his claim that his resignation was 'ineffective.'"  *Id.* at 14.

Despite the Court's earlier conclusion, Plaintiff's most recent Reply seeks to re-litigate the issues of who has the authority to "accept" his resignation and whether or not Plaintiff still holds the National Vice President position.[5]  *See* Pl.'s (2d) Reply at 2–7.  The Court previously concluded that Plaintiff has failed to carry his burden of demonstrating a substantial likely of success on the merits of his claim that his resignation was "ineffective," and so he has also failed to demonstrate a substantial likelihood of success on the merits of his claim that he is entitled to the procedures applicable to "national officers" in Article XIII.  Accordingly, Plaintiff is not entitled to a TRO to enjoin the trial committee proceeding brought under Articles IX and XXIII, which shall address the future status of his membership in AFGE.  *See* Def.'s (2d) Opp'n at 19–20.  Plaintiff's failure to demonstrate a substantial likelihood of success on the merits of his claim

---

[4] Plaintiff now argues that *Roberts Rules* "prevail when not inconsistent with the National Constitution and NEC Policy,"  Pl.'s (2d) Reply at 7, but does not offer any analysis as to how that alters the Court's earlier reasoning.  Nor does it address the Court's conclusion that *even if Roberts Rules applied*, they would not direct the outcome Plaintiff seeks here.  *See* Mem. Op. at 13.

[5] In his efforts to persuade the Court to alter its previous analysis, Plaintiff analogizes his situation, guided by the AFGE's National Constitution, to what would happen under the United States Constitutions if a member of the United States House of Representatives resigned.  *See* Pl.'s (2d) Reply at  3–6; *id.* at 6 ("If the full House of Representatives cannot accept the resignation of a House member, certainly, the Speaker cannot do so. Likewise, if the full NEC cannot accept a resignation of a National Vice President, then NP Kelley certainly cannot.").  It is unclear to the Court how this comparison applies; the two constitutions are, of course, entirely different.

that his resignation was "ineffective" also undermines the other facets of the TRO he seeks—requiring AFGE to send a "letter" to AFGE members indicating that he did not resign and ordering that Plaintiff be reinstated to the National Vice President position.  *See* TRO Mem. at 34.

Finally, in his Reply, Plaintiff argues that the Court should "enjoin Defendant from removing Plaintiff . . . as a member based solely on hearsay allegations and without first affording Plaintiff an opportunity to defend himself[.]" Def.'s (2d) Reply at 11.  This argument, in Plaintiff's own words, puts the "cart before the horse," as the trial committee hearing has not yet occurred, and it is unknown what the outcome of that proceeding will be.  *Id.* at 9.  Moreover, as AFGE notes, any decision by an internal trial committee regarding his AFGE membership status may be appealed to the [Council]."  Def.'s (2d) Opp'n at 5.

In sum, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of his claims that he is entitled to a TRO to enjoin the trial committee and to require AFGE to take other actions based on his claim that he is still the National Vice President.

### 3. Plaintiff Has Failed to Demonstrate A Likelihood of Success that the Court Has Jurisdiction to Consider Claims Regarding the Trial Committee Hearing.

In light of the Court's earlier conclusion that Plaintiff has failed to carry his burden of demonstrating that he is likely to succeed on his claim that he did not "resign" from the National Vice President position, the Court also finds that he has failed to demonstrate that the Court has jurisdiction to proceed with the claims pertaining to AFGE's internal trial committee proceeding. *See Obama v. Klayman*, 800 F.3d 559, 564  (D.C. Cir. 2015) ("[T]he 'merits' on which a plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction.").

Defendant argues that Plaintiff's claims pertaining to its internal disciplinary process are preempted by the Civil Service Reform Act ("CSRA"), and therefore the Court lacks jurisdiction

to consider them. *See* Def.'s (2d) Opp'n at 20–23. The CSRA "establishes a comprehensive scheme to deal with labor relations[.]" *AFGE v. U.S. Sec'y of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (quoting *Dep't of Def. v. FLRA*, 685 F.2d 641, 644 (D.C. Cir. 1982)). This "comprehensive scheme" conveys Congress's intent that "individuals bringing membership and election claims of the type governed by the CSRA must seek redress through its administrative pathway, not through the district court." *Hudson v. AFGE*, Civil Action No. 19-2738, 2020 WL 3035039, at *5 (D.D.C. June 5, 2020); *see also Elgin v. U.S. Dep't of Treasury*, 567 U.S. 1, 11 (2012) ("[E]xtra statutory review is not available to those employees to whom the CSRA grants administrative and judicial review."). At least one other district court in this jurisdiction has concluded that the CSRA preempts claims against AFGE by a former-federal-employee member brought pursuant to the LMRDA. *See Hudson*, 2020 WL 3035030, at *5.

Plaintiff responds only with the conclusory assertion that he remains the National Vice President for District 9 and therefore "his claims . . . are not preempted by the CSRA." Pl.'s (2d) Reply at 7. This assertion rests on his Plaintiff's reasoning that, as a national officer of AFGE, he is a "private sector employee" and therefore the CSRA does not apply to him. Pl.'s Reply at 3–4; Pl.'s (2d) Reply at 7. But, as the Court has previously concluded , Plaintiff has failed to carry his burden of demonstrating a substantial likelihood of success that he *does* remain in that position— and so, this argument fails. *See* Mem. Op. at 10–14.

Furthermore, Plaintiff does not provide any supporting argument or legal authority for the proposition that the CSRA does not apply to him when, as Defendant notes, his membership in the AFGE appears to be predicated on his status as a former federal employee. *See* Def.'s (2d) Opp'n at 22. In *Hudson*, for example, the Court concluded that the plaintiff's LMRDA claim against AFGE was preempted by the CSRA even though the plaintiff had retired from federal service.

*Hudson*, 2020 WL 3035039, at *6; *see also Buesgens v. Coates*, 435 F. Supp. 2d 1, 2–4 (D.D.C. 2006) (concluding that the court lacked jurisdiction over federal-sector retiree's claim against his union because it was covered by CSRA and could be brought only before the appropriate administrative agency).  At most, Plaintiff pointed out in an earlier pleading that the district court in *Hudson* did not consider whether the CSRA preempts claims of former-federal employees currently holding private sector positions because that argument was not raised.  *See* Pl.'s Opp'n at 2, ECF No. 18.  But, again, Plaintiff has failed to carry his burden that he is likely to succeed in showing that he continues to hold his National Vice President position.  He relies exclusively on the conclusory proposition that this Court "has subject matter jurisdiction to hear his claims because they are not preempted by the CSRA."  Pl.'s (2d) Reply at 7.  This assertion—devoid of any legal reasoning or supporting legal authority—is insufficient for Plaintiff to carry his burden of demonstrating the likelihood that the Court has jurisdiction over his claims.

The Court finds that Plaintiff has failed to carry his burden of showing a likelihood of success on the merits of his claims.  Although failure to show a likelihood of success on the merits alone is sufficient to defeat a motion for a TRO, the Court shall nonetheless briefly address the remaining TRO factors.  *See Ark. Dairy Co-op Ass'n, Inc. v. USDA*, 573 F.3d 815, 832 (D.C. Cir. 2009); *Apotex, Inc. v. FDA*, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006).

### B.  Irreparable Harm

The Court next considers whether Plaintiff has demonstrated "irreparable harm."  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  The D.C. Circuit "has set a high standard for irreparable injury."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). To constitute "irreparable harm," the injury alleged must be "both certain and great, actual and not theoretical, beyond remediation, and of such *imminence* that there is a clear and present need for equitable relief."  *Mexichem Specialty Resins, Inc. v. EPA*,

16

787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotation marks and citation omitted).   And "[p]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (internal citations omitted).   A "possibility of irreparable harm" is not enough.   *Id.*   "[P]roving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury is 'certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm.'"   *Power Mobility Coal. v. Leavitt,* 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).   For the reasons set forth below, the Court finds that Plaintiff  has not adequately demonstrated a certainty of irreparable harm arising from allowing the trial committee hearing to proceed no sooner than December 20, 2021.  This shortcoming weighs heavily against Plaintiff's request for a TRO.

In his TRO Motion, Plaintiff indicates only that he would "suffer irreparable harm" if the trial committee were to proceed on December 9, 2021—based on his claim that he received insufficient notice and time to prepare.  Pl.'s TRO Mem. at 32.  As indicated *supra* Section III(A)(1), is no longer at issue in light of AFGE's agreement to postpone the trial committee proceeding until at least December 20, 2021—two weeks after Plaintiff indicates he received notice of the charges and hearing date.  *See* Pl.'s TRO Mem. at 14, 23; Def.'s (2d) Opp'n at 25.

As to Plaintiff's claim that the trial committee was improperly constituted under the incorrect provision of AFGE's National Constitution, he provides no argument or analysis demonstrating that permitting the trial committee hearing to proceed would "irreparably harm" him.  At most, Plaintiff argues that suspension or loss of his membership would cause "irreparable damage to Plaintiff's reputation within the AFGE organization[.]"  Pl.'s TRO Mem. at 30–31.  But these claims of "damage" are speculative, as they turn on the outcome of the trial committee

17

proceeding.  And, as Defendant notes, the AFGE National Constitution provides a process to appeal the outcome of a trial committee hearing to the Council in the event Plaintiff disagrees with the outcome.  *See* Def.'s (2d) Opp'n at 26.  Accordingly, Plaintiff has failed to demonstrate his burden of demonstrating that any alleged harm is actual, imminent, and irreparable.  *Mexichem Specialty*, 787 F.3d at 555.

Similarly, in his Reply, Plaintiff contends that the alleged "unlawful removal" from his position as National Vice President amounts to irreparable harm because "it will become permanent" the trial committee hearing proceeds on December 20.  *See* Pl.'s (2d) Reply at 7.  This argument too rests on speculation, and it ignores the Court's reasoning in its earlier Memorandum Opinion that loss of employment is typically not "irreparable harm" that can warrant a TRO.  *See* Mem. Op. at 17–18.

### C.  Balance of the Equities and Public Interest

"The final two factors the Court must consider when deciding whether to grant a preliminary injunction [or a temporary restraining order] are the balance of harms and the public interest."  *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013).  When "balanc[ing] the competing claims of injury," the Court must "consider the effect on each party of the granting or withholding of the requested relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Plaintiff's conclusory nods to the final two TRO factors—public interest and balance of equities—fail to establish that he is entitled to the drastic remedy of a TRO.  In his TRO Motion, Plaintiff contends only that  "any harm from enjoining the proposed December 9, 2021 trial committee. . . would be outweighed by the antidemocratic effects of AFGE unlawfully removing an officer elected by District 9 AFGE members and depriving those members of the representative of their choice."  Pl.'s TRO Mem. at 33.  As the Court has previously discussed, Plaintiff has *not*

demonstrated a substantial likelihood of success on his claim that he was "unlawfully removed as an officer." *See* Mem. Op. at 10–14. In his Reply, Plaintiff claims only that "the balance of equities and public interest demand that Plaintiff's request be granted because AFGE and the public will be seriously harmed [if] AFGE is permitted to proceed with the December [20, 2021] hearing under Article XXIII." Pl.'s (2d) Reply at 7. This bare assertion—devoid of any supporting analysis—is insufficient to demonstrate that these final TRO factors weigh in Plaintiff's favor. AFGE, on the other hand, contends that granting Plaintiff's requested TRO would undermine the results of its special election and preemptively interfere with its internal disciplinary procedures and available appeals process. *See* Def.'s (2d) Opp'n at 25–26.

Weighing these competing interests, the Court concludes that  that Plaintiff has not carried his burden to demonstrate the balance of equities tips in his favor, or that the public interest requires the Court to enjoin the trial committee hearing, require him to be reinstated, or to direct AFGE to inform its members that he did not resign.

## IV.    CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court concludes that Plaintiff has failed to carry his burden of demonstrating a substantial likelihood of success on the merits of his claims, a certainty of irreparable harm, or that the balance of hardships and the public interest weigh in his favor. Accordingly, the Court **DENIES** the remainder of Plaintiff's Motion for a Temporary Restraining Order that was not previously addressed by the Court in its [28] Order.

An appropriate Order accompanies this Memorandum Opinion.

**Dated**: December 17, 2021

            /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge